No. 22-11341-F

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

The Professional Airline Flight Control Association,

*Plaintiff-Appellant*,

v.

Spirit Airlines, Inc.

*Defendant-Appellee*.

Appeal from the United States District Court for the Southern District of Florida

No. 0:21-cv-60396-RKA

_____

## APPELLANT'S REPLY BRIEF

_____

D. Marcus Braswell, Jr. (146160)
Sugarman, Susskind, Braswell & Herrera
150 Alhambra Cir., Suite 725
Coral Gables, Fl. 33134
(305) 529-2801

*Attorneys for Appellant*
The Professional Airline Flight Control
Association

1

No.: 22-11341-F
**Professional Airline Flight Association v. SAVE**


**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**


Pursuant to FRAP 26.1 and 11th Cir. R. 26.1-2(b), I certify that the Certificate of Interested Persons and Corporate Disclosure Statement filed in Appellant's Opening Brief continues to be complete at the time of filing of this Reply Brief.

# Table Of Contents

Page

Certificate of Interested Persons and Corporate Disclosure Statement………….C-1

Table of Contents………………………………………………………..........i

Table of Citations…………………………………………..….............…....iii

Argument.........................................................................................................1

    I.     Introduction .........................................................................................1

    II.    SPIRIT AND THE DISTRICT COURT ERRONEOUSLY ASSERT THAT A DISPUTE CAN BE MINOR UNDER THE *CONRAIL* STANDARD EVEN IN THE ABSENCE OF ANY EXPRESS OR IMPLIED PROVISION IN THE AGREEMENT THAT ARGUABLY JUSTIFIES THE EMPLOYER'S ACTIONS…………………....3

        A. There is no express or implied provision in the Agreement that arguably justifies Spirit's attempts to change the Flight Dispatch Officers' work location. ................................................................3

           1. Given that the management rights clause constitutes a retention of legal rights rather than a conferral of contractual rights, the question here is whether the district court erred in holding that employers have a legal right under the RLA to act unilaterally in the absence of a provision in the bargaining agreement prohibiting the employer from doing so……………………….3

           2. The district court erred in holding that the RLA reserves to employers the unilateral right to change employees' work location if the bargaining agreement does not prohibit it from doing so, and therefore Spirit did not retain such a right under the management rights clause……………………………………..6

           3. No other provision of the Agreement arguably justifies Spirit's attempt to change employees' work location…………………15

i

B.    In the absence of an express or implied provision in the Agreement authorizing Spirit to modify employees' work assignments, Spirit cannot satisfy *Conrail*'s "arguably justified" standard, and the Court has jurisdiction over this case as a major dispute**.**......................................................................................17

III.    This case is indistinguishable from *Shore Line*..................................22

IV.    Request for Oral Argument...................................................23

Conclusion...........................................................................................23

Certificate Of Compliance..................................................................25

## Table of Citations

**Cases**                                                                                    **Page(s)**

*Airlines Pros. Ass'n, Teamster Loc. Union 1224 v. ABX Air, Inc.*,
　　400 F3d. 411 (6th Cir. 2005)……………………………………......7, 12, 13, 14

*Airline Pros. Ass'n of Int'l Bhd. of Teamsters, Loc. Union No. 1224, AFL-CIO v. ABX Air, Inc.*,
　　274 F.3d 1023 (6th Cir. 2001) ................................................................12, 13, 14

*Allied Fed'n BMWE v. CSX Transp., Inc.*,
　　No. 3:21-CV-00013, 2022 WL 1156982 (W.D. Ky. Apr. 19, 2022)…………….14

*ALPA v. Mesa Airlines, Inc.*,
　　No. 1:17-cv-236, 2017 WL 2837133 (E.D. Va. June 29, 2017)…………………13

*Consol. Rail Corp. v. Ry. Lab. Executives' Ass'n*,
　　491 U.S. 299 (1989)...........................................................................passim

*Detroit & Toledo Shore Line Railroad Co. v. United Transportation Union*,
　　396 U.S. 142 (1969)............................................. ....................8, 9, 10, 21, 22, 23

*Pittsburgh & Lake Erie R.R. Co. v. Ry. Lab. Execs.' Ass'n*,
　　491 U.S. 490 (1989)...........................................................................passim

*Sanzari v. Metro-North R. Co.*,
　　19-cv-8689 (LJL), 2021 WL 467339 (S.D.N.Y. Feb. 9, 2021)…………………13

*United Steelworkers of Am v. Warrior & Gulf Nav. Co.*,
　　363 U.S. 574 (1960)............<<.........................................................................7, 8

**Statutes**

　　45 U.S.C. § 156................................................................................................1

## **ARGUMENT**

## I.    INTRODUCTION

Plaintiff-Appellant Professional Airline Flight Control Association ("PAFCA") brought this action to enjoin Defendant-Appellee Spirit Airlines, Inc. from changing employees' working conditions without exhausting the mandatory bargaining and mediation procedures set forth in Section 6 of the Railway Labor Act (RLA), 45 U.S.C. § 156.  PAFCA represents the approximately 75 Flight Dispatch Officers (FDOs) whom Spirit employs, and who are covered under a collective bargaining agreement ("the Agreement") between PAFCA and Spirit.

For more than twenty years, the FDOs have worked as an integral unit in a single dispatch office located in Miramar, Florida.  Spirit is seeking unilaterally to divide and to change the FDOs' work location.  In particular, it is attempting, without complying with Section 6 of the Act, to create and operate, simultaneously with its Miramar office, a second dispatch office in Orlando, Florida—a three-hour drive from Miramar—to which some of the FDOs would report,

Spirit maintains that this case constitutes a minor dispute under the RLA, and that therefore it is not required to engage in Section 6 bargaining and mediation.  In support, Spirit asserts that the management rights clause in the parties' Agreement arguably confers upon Spirit the right to unilaterally change the unionized employees' work location.  The district court held, however, and PAFCA agrees,

that the management rights clause effectuates a retention of legal rights, rather than a conferral of contractual rights. According to that holding, Spirit can only retain under the management rights clause such rights as the RLA legally reserves to employers.

The district court, borrowing from precedent under the National Labor Relations Act (NLRA), erred in its holding as to the breadth of those rights. It held that the RLA reserves legally to employers, the right to take any unilateral action that is not prohibited in the collective bargaining agreement. That ruling is contrary to settled U.S. Supreme Court case law.

In particular, the controlling case law establishes that an employer does not have the right under the RLA to unilaterally change its employees' work location on the basis that the collective bargaining agreement does not prohibit the employer from doing so. Given that that right does not exist, Spirit could not have retained it under the management rights clause. Spirit therefore has no contractual ground upon which to claim that this dispute is minor.

**II.    SPIRIT AND THE DISTRICT COURT ERRONEOUSLY ASSERT THAT A DISPUTE CAN BE MINOR UNDER THE *CONRAIL* STANDARD EVEN IN THE ABSENCE OF ANY EXPRESS OR IMPLIED PROVISION IN THE AGREEMENT THAT ARGUABLY JUSTIFIES THE EMPLOYER'S ACTIONS.**

**A.    There is no express or implied provision in the Agreement that arguably justifies Spirit's attempts to change the Flight Dispatch Officers' work location.**

**1)    Given that the management rights clause effectuates a retention of legal rights rather than a conferral of contractual rights, the question here is whether the district court erred in holding that employers have a legal right under the RLA to act unilaterally in the absence of a provision in the bargaining agreement prohibiting the employer from doing so.**

The district court and Spirit rely heavily upon the management rights clause in the Agreement to argue that the present dispute is minor. That clause is found in Section 18.A. of the Agreement and reads as follows:

> Except as restricted by an express provision of this Agreement, the Company shall **retain** all rights to manage and operate its business and workforce, including but not limited to the right to sell or discontinue all or part of the business; to sell or lease aircraft or facilities; to determine where and when to operate scheduled or unscheduled flights; to determine its marketing methods and strategies and to enter into code sharing, affiliation or marketing agreements with other carriers; to invest (including equity investments) in other business entities including, without limitation, other air carriers; to determine the type of aircraft it will utilize; to increase and decrease its work force; to establish procedures; to determine qualifications for employment and promotions; to establish rules of conduct; to determine work schedules; to determine the means of providing passenger service; to determine

3

> size and composition of the workforce; to determine what equipment
> will be used; and to transfer operations or part of operations. (emphasis
> added).

Agreement, Doc. 10-1 at 48. Giving the word "retain" its ordinary meaning, the district court recognized that the clause does not purport to confer contractual rights upon the carrier. It took the position, and PAFCA agrees, that Section 18.A. relates to the ***retention*** of rights reserved legally under the RLA to management with regard to matters not addressed or prohibited by the collective bargaining agreement.

The district court was very clear as to the meaning it ascribed to the word "retain":

> ...Where the words of a contract in writing are clear and unambiguous, its
> meaning is to be ascertained in accordance with its plainly expressed
> intent…And "retain" means…'to continue to have or possess'...To continue
> to control or possess something presupposes that the subject already had the
> thing.

Order, Doc. 50 at 18. Since the contract cannot confer that which Spirit purportedly already had, it follows that, in the district court's mind, Section 18.A. is not a source of rights, but a statement of retention of rights. Accordingly, Spirit can only retain under the management rights clause such rights as the RLA legally reserves to employers. Again, PAFCA agrees with that finding.

The district court's error is its holding as to what rights the RLA reserves to employers. That issue, which is at the core of this appeal, is discussed in Section II.A.2 below.

4

Spirit also recognizes Section 18.A. as a retention of rights rather than a source of rights, but asserts for the very first time that the rights retained are those that it held prior to the unionization of the employees. See Brief, at 34.  That is not what the district court found, and Section 18.A. makes no reference to "prior to unionization."  Spirit's newly raised proposition is completely unsupported by the district court's order and by the very terms of the agreement on its face.

In Section 18.C. of the Agreement, "The parties agree that any past practices established prior to the date of this Agreement shall not create any contractual or legal obligation to continue such practices following the effective date of this Agreement."  Agreement, Doc. 10-1 at 48.  It follows, therefore, that whatever rights Spirit purports to retain under Section 18.A. are legal, not contractual.  Such rights cannot be derived from previous contracts because Section 18.C precludes such.  Such rights cannot be derived from the current Agreement, because, as the district court correctly noted, to retain something presupposes that it is already held.  Clearly, therefore, Section 18.A. can only encompass legal rights–those that the RLA legally reserves to a carrier.

Since the management rights clause does not create or confer new contractual rights, it cannot, alone, serve as arguable justification for an employment action. The RLA or case law must provide for the rights retained in Section 18.A.

2)      **The district court erred in holding that the RLA reserves to employers the unilateral right to change employees' work location if the bargaining agreement does not prohibit it from doing so, and therefore Spirit did not retain such a right under the management rights clause.**

Since Section 18.A. of the Agreement does not stand on its own as a source of rights, the question here (which the district court answered erroneously) is what are the rights that the RLA reserves to management with regards to matters not prohibited in a bargaining agreement.

The district court posited two categories of rights, "management prerogatives" and "retained rights", both of which, according to the district court, are legally reserved to management under the RLA if not restricted by the collective bargaining agreement. Order, Doc. 50 at 17. The legal existence of the former is not disputed.[1] On the other hand, the existence of the latter has been clearly rejected under Supreme Court precedent, and on that ground, this case should be remanded.

In defining the concept of retained rights, the district court concluded, "on issues not discussed in the Agreement, management retains discretion." Order, Doc.

---

[1] As described by the district court, management prerogatives are "the kinds of core entrepreneurial decisions an employer is never required to bargain over." Order, Doc 50 at 17. In *Pittsburgh & L.E.R. Co. v RLEA*, 491 U.S. 490 (1989) (*PL&E*), the Court held that the decision to sell assets and to cease operations is a management prerogative.

50 at 17. In other words, the district court found all employment matters not restricted by the collective bargaining agreement are "retained rights." Id.

While the district court held that the concept of retained rights under the RLA is "widely" recognized, Order, Doc 50 at 17, neither Spirit, nor the district court cites a single, controlling authority establishing the existence of retained rights under the RLA.

The district court and Spirit both cite principally to the Supreme Court's decision in *United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574* (1960) in support of the asserted existence of retained rights under the RLA. Order, Doc. 50 at 17; Brief, at 19. However, *Warrior & Gulf* concerned the breadth of arbitrators' authority to resolve grievances under collective bargaining agreements governed by the National Labor Relations Act. The case had nothing to do with the RLA.

The district court and Spirit also rely heavily on the sixth circuit's decision in *Airline Pros. Ass'n, Teamster Loc. Union 1224 v. ABX Air, Inc.*, 400 F.3d 411 (6th Cir. 2005), a decision that is neither controlling, nor persuasive, and that cites *Warrior & Gulf*, for the proposition asserted by the district court and Spirit. Order, Doc. 50 at 17; Brief, at 20 nt. 9. The district court did not cite any other cases to support the existence of retained rights under the RLA. It relied thus entirely on case law rooted in the NLRA.

Likewise, Spirit contends, "When an employer is non-union, obviously there are no contractual restrictions on its exercise of its rights to manage its business and workforce as it sees fit. After employees unionize, the union negotiates limitations on the employer's prior ability to exercise those rights unilaterally; absent such restrictions, management retains that authority, regardless of whether the CBA contains an explicit provision to that effect." Brief, at 19. For that proposition it cites to…*Warrior & Gulf.* Brief, at 19.

The district court failed to cite to the Supreme Court's decision in *PL&E*, 491 U.S. 490, in which the Court defined clearly the meaning of its earlier decision in *Detroit & The Shore Line Railroad Co. v. United Transp. Union,* 396 U.S. 142 (1962) *(Shore Line)*. *PL&E* and *Shore Line* are controlling authorities that relate directly to the question here at hand.

PAFCA relied heavily upon *Shore Line* in the proceedings before the district court, but the court distinguished the case on grounds that are flatly contrary to the Supreme Court's opinion in *PL&E*. With regard to *Shore Line*, the district court reasoned:

> The only issue before the Court appears in the first sentence of its opinion: "This case raises a question concerning the extent to which the [RLA] imposes an obligation upon the parties to a railroad labor dispute to maintain the status quo while the purposely long and drawn out procedures of the Act are exhausted"…
> In our case, though, we don't get to the big question the Court addressed in Shore Line–the scope of any status-quo injunction–**because (contra Shore Line) we have no Section 6 proposal to amend the CBA.**

Order, Doc 50 at 12-13 (emphasis added).

In *PL&E*, the Court made clear that under its holding in *Shore Line*, the giving of Section 6 notice is immaterial to the application of the Section 6 status quo requirement.  In Footnote 15, the Court explained:

> Section 156 deals with bargaining and settlement procedures with respect to changes in agreements affecting rates of pay, rules, or working conditions. There must be notice of such intended changes, as well as bargaining and mediation if requested or proffered. And in every case involving such notice, i.e., of intended changes in agreements, rates of pay, rules or working conditions shall not be changed by the carrier until the specified procedures are satisfied. **Because § 156 concerns changes in agreements, it is surely arguable that it is open to a construction that would not require the status quo with respect to working conditions that have never been the subject of an agreement, expressed or implied, and that, if no notice of changes had been served by the union, could be changed by the carrier without any bargaining whatsoever.  Shore Line rejected that construction,** but as indicated in the text, we are not inclined to apply Shore Line to the decision of P&LE to go out of business.

*PL&E*, 491 U.S. at 506 n.15 (emphasis added).  The district court's failure to reconcile its own ruling regarding the significance of Section 6 notice, with that of the Supreme Court in *PL&E*, is on its own grounds for remand.

The *PL&E* ruling is also contrary to the court's posited existence of the concept of retained rights.  Clearly an employer does not retain the unilateral right to take actions that are not prohibited in the collective bargaining agreement, if, as the Court held in *PL&E*, employers are required to engage in Section 6 bargaining over such matters.  The Court in *PL&E* held that employers must engage in Section

6 bargaining regardless of whether Section 6 notice has been given by the union. Simply put, the Court's clarification in *PL&E* of its holding in *Shore Line* precludes the existence of retained rights as espoused by the district court. On that ground, as well, this matter should be remanded.

Like the district court, Spirit makes no effort to reconcile its assertion of the existence of retained rights under the RLA with the Court's ruling in *PL&E*. Spirit contents itself rather to state that *PL&E* "had nothing to do with the distinction between major and minor disputes." Brief, at 24, nt. 12. That contention is at odds with the assessment of *PL&E* stated in the treatise of which counsel for Spirit is co-editor in chief.

The treatise states the following general proposition and cites *PL&E* as a "but see" reference, as follows:

> The absence of contract language addressing the disputed actions does not necessarily determine whether a dispute is major or minor. Often, it is when the parties' collective bargaining agreement is silent on a particular issue that distinguishing major and minor disputes can be most controversial. Contractual silence can, in some cases, be arguably construed as a reservation by the employer of the right to take the disputed action.…

> *But see* International Bhd. of Teamsters v. Chautauqua Airlines, 186 F. Supp 2d, 901, 911 (S.D. Ind. 2001) (rejecting defense where contract did not squarely address disputed issue, because if carrier's "claim of contractual justification cannot be found within the contract language, its claim must be termed insubstantial"); ***See also* Pittsburgh & Lake Erie v. RLEA, 491 U.S. 490 , 506 n. 15 (1989)** (Because § 156 concerns changes in agreements, it is surely arguable that it is open to a construction that would not require the status quo with respect to

working conditions that have never been the subject of an agreement, expressed or implied, and that, if no notice of changes had been served by the union, could be changed by the carrier without any bargaining whatsoever.  Shore Line rejected that construction,..."). *The Railway Labor Act,* 7-16, 7-17 n.43 (Douglas W. Hall et al. eds., 4th ed., 2016). (emphasis added).

The general assertion as stated in the treatise that contractual silence "**can, in some cases,**" indicate a retention of rights by the employers, contrasts starkly with the absolute position that Spirit and the district court have taken in the proceedings, according to which an employer retains discretion with regard to all matters not restricted in the collective bargaining agreement, "regardless of whether the CBA contains an explicit provision to that effect."  Brief, at 19.

In addition, the "*But See*" citation to *PL&E* belies Spirit's contention here that *PL&E* (and *Shore Line*) "had nothing to do with the distinction between major and minor disputes," Brief, at 24, nt. 12, and indeed confirms *PL&E*'s place as a controlling authority rejecting both the concept of retained rights and the ability to satisfy the *Conrail* standard by contractual silence.  The passage in the treatise leaves no doubt that the district court's failure to address *PL&E* in its Order, is ground for remand.[2]

_____

[2] Spirit argues that under PAFCA's arguments, the only rights that Spirit could have retained under Section 18.A. of the Agreement are management prerogatives.  PAFCA does not go that far:  courts may in the future define other rights that are legally reserved to employers under the RLA.  PAFCA argues only that there is no basis in caselaw, nor in logic, upon which to recognize the existence of retained rights under the RLA as the district court and Spirit have defined them.

11

Rather than analyze Supreme Court authority that is directly on point, Spirit cites to a number of non-controlling authorities that, furthermore, do not stand for the proposition that Spirit asserts here. Like the district court, Spirit relies principally upon the sixth circuit's rulings in *Airline Profs. Ass'n Teamster Local 1224 v. ABX Air, Inc.*, 274 F.3d 1023 (6th Cir. 2001) (*ABX I*) and *Airline Profs. Ass'n Teamster Local Union 1224 v. ABX Air, Inc.*, 400 F.3d 411 (6th Cir. 2005) *(ABX II)*, both of which have their roots firmly anchored in the NLRA, not the RLA. Brief, at 20, nt. 9.

Furthermore, though in each case the court cites NLRA authority in support of the proposition that management retains discretion with respect to matters not restricted in by the collective bargaining agreement,[3] both cases are based upon specific findings of past practices that constituted implied terms of the collective bargaining agreement permitting the employer to take the disputed action. *ABX I*, 274 F.3d at 1029 (holding that "Moreover, ABX had, in the past, exercised unilateral control over its employee searching policy. Thus, as in *Conrail*, ABX's position is ***"arguably justified" by the implied terms*** of the collective bargaining agreement.") (emphasis added); *ABX II*, 400 F.3d at 416 ("We hold that ABX's claim…is arguably justified under the written and ***implied terms*** of the parties' 1997 CBA…") (emphasis added). Here, of course, Spirit has not made any showing of a past

---

[3] *ABX I*, 274 F.3d at 1029,

practice of unilaterally modifying the employees' work assignments. The absence of the assertion of an implied provision of the Agreement here is a defining, distinguishing element of this case compared to *Conrail* and *ABX I* and *ABX II*

Furthermore, even if *ABX I* and *ABX II* had not been based upon implied provisions of the Agreement, and were thus indistinguishable, in neither case did the court address the Supreme Court's ruling in *PL&E*. On that basis alone, this Court should refrain from following *ABX I* and *ABX II*, and, based upon the district court's heavy reliance upon the latter, should remand this case for consideration of *PL&E*.

In addition to *ABX I* and *ABX II*, Spirit cites three lower court cases, none of which is controlling or persuasive. See Brief, at 20, nt. 9. Among the cases cited is *Sanzari v. Metro-North R. Co.*, 19-cv-8689 (LJL), 2021 WL 467339 (S.D.N.Y. Feb. 9, 2021), which like *ABX I* and *ABX II*, is based upon a finding of a past practice of unilateral action that established an implied provision of the agreement (an element which, again, is not present here). Id., at 11 ("Contrary to Plaintiff's argument, the 1998 and 1999 letters reflect, if anything, the type of unilateral policy-setting that in *Conrail* supported a finding of employer discretion."). Spirit also cites *ALPA v. Mesa Airlines, Inc*., No. 1:17-cv-236, 2017 WL 2837133 (E.D. Va. June 29, 2017), which like *Sanzari*, and *ABX I and ABX II*, is based upon an element missing here– a past practice of unilateral employment action constituting an implied provision of the agreement. Id., at 7 ("...the past practice of providing bonuses without formal

13

objection is sufficient for Mesa to state a plausible claim to implied rights."). Finally, Spirit cites *Allied Fed'n BMWE v. CSX Transp., Inc.*, No. 3:21-CV-00013, 2022 WL 1156982 (W.D. Ky. Apr. 19, 2022), a district court case within the Sixth Circuit that follows *ABX I*. *Allied Federation*, No. 3:21-CV-00013, 2022 WL 1156982, at 3.

The cases cited by Spirit show just how insubstantial the basis of the district court's ruling truly is. The Sixth Circuit, through its rulings in *ABX I and II*, both of which were based in part upon findings of past practice not present here, is the sole to hold that employers under the RLA retain discretion over matters not restricted in the collective bargaining agreement. Given that both rulings draw their essence directly from the NLRA without any analysis of the compatibility of the concept of retained rights to the differing framework of the RLA–in particular the major/minor dispute structure that does not exist under the NLRA. Given that neither ruling discusses the Supreme Court's decision in *PL&E*, which, even according to the treatise co-edited by counsel for Spirit, seems clearly to close the door on the existence of retained rights under the RLA. This Court should decline to follow those two rulings.

Since the district court relied heavily upon *ABX II*, and wholly ignored *PL&E*, this matter should be remanded to the district court.

### 3) No other provision of the Agreement arguably justifies Spirit's attempt to change employees' work location.

Spirit's argument that other provisions of the Agreement arguably justify Spirit's decision, hardly merits response.

In particular, Spirit proffers a fantastically far-reaching reconceptualization of Section 6D of the Agreement in order to argue that this case presents competing interpretations of the Agreement. See Brief, at 31. PAFCA has not presented any interpretation of Section 6D, and none need be given. Section 6.D. provides:

> Where the Company opts to relocate the dispatch office to a new domicile more than fifty (50) AAA miles from its current location, the parties will meet to discuss and agree upon moving expenses for affected employees.

Agreement, Doc. 10-1 at 19.

That provision on its very face relates solely and explicitly to the ***relocation*** of the dispatch center to a new domicile ***more than 50 miles*** from its ***current*** location. Nothing more. And given that it is undisputed here that the current dispatch center is not going to move at all from its current location, there is nothing for this Court to do but to examine the provision on its face (i.e., without interpreting it), and to find in accordance with *Conrail*, that Spirit's contractual claim is "obviously insubstantial and frivolous." See *Conrail*.

Spirit also argues, "Moreover, the requirement that the parties agree to moving expenses for "affected" employees," means that there may be unaffected employees,

and that the provision could relate therefore to a partial transfer of employees.  Brief, at 31.  Before there are any "affected employees," there must be, in accordance with the provision, a relocation of the dispatch center more than 50 miles from its current location–and it is undisputed that no relocation will take place.  If a relocation occurred, the employees would be affected, and the provision states that the moving expenses in light of the fact that they would be affected, would be negotiated.

Nothing in the *Conrail* standard requires that all possible and fanciful interpretations of a provision must be excluded in order to establish that the employer's claim is insubstantial and frivolous.  Spirit and the district court have taken a perfectly clear provision and turned it on its head.

The fact that the provision clearly confers upon Spirit the right to ***relocate*** the dispatch center cannot even remotely be said to "arguably justify" the ***creation*** of a second dispatch center.  Relocation does not mean by any recognized definition, multiplication.  That point is perfectly illustrated by the fact that if Spirit took the action that it proposes to take, at the end of the transaction, the current dispatch center would not have moved more than 50 miles from its current location–it will still be at its same location–and the conditions provided for plainly on the face of the provision would not exist.

**B)** **In the absence of an express or implied provision in the Agreement authorizing Spirit to modify employees' work assignments, Spirit cannot satisfy *Conrail*'s "arguably justified" standard, and the Court has jurisdiction over this case as a major dispute.**

Under Conrail, a dispute is major unless the employer can show that an express or implied provision of the contract arguably justifies the contested employment decision.  *Conrail*, 491 U.S. at 310   A court must find the dispute to be major, if the employer's contractual claim is obviously insubstantial or frivolous. Id.   Spirit's attempts to characterize this case as a minor dispute fail because there is no express or implied provision in the contract that arguably justifies its actions. As discussed in Section II.A.1 above, the management rights provision does not confer rights upon Spirit.  That Section operates only to retain whatever rights are legally reserved to employers under the RLA once an agreement has been reached. As discussed in Section II.A.2 above, there is no legally retained right under the RLA for employers to change employees' work assignments.

As discussed in Section II.A.3 above, no other provision of the collective bargaining agreement arguably justifies Spirit's desire to change employees' work assignments unilaterally.  Since the management rights provision does not confer rights upon Spirit, and no other provision of the contract arguably justifies Spirit's decision, the contract is silent with regard to Spirit's asserted authority to change

work assignments unilaterally.  As set forth below, contractual silence is insufficient to meet the *Conrail* standard.

In its attempt to liken this case to *Conrail*, Spirit turns *Conrail* on its head. Spirit asserts, "courts regularly find disputes minor, even where there is no particular contractual provision that addresses the issue.  *Conrail* itself was such a case."  Brief, at 18.  In other words, Spirit argues that *Conrail* stands for the proposition that a court can find a case to be minor, even in the complete absence of any contractual provision, whether expressly written or implied from past practice.

*Conrail* did not hold that a dispute may be minor in the absence of a particular contractual provision.  *Conrail* held that collective bargaining agreements may contain explicit and implied provisions, and that implied provisions may, as well as explicit provisions, serve as arguable justification of an employer's actions.  491 U.S. at 311

In *Conrail*, a dispute involving an employer's unilateral implementation of a drug testing policy, the employer argued that its practice in the past of unilaterally modifying medical examination procedures and standards established an implied provision in the contract permitting the employer had the right to act unilaterally in such matters.  The Court in *Conrail* stated expressly that in "this case, Conrail's contractual claim rests solely upon implied contractual terms, **as interpreted in light of past practice**." *Conrail*, 491 U.S. 312.

The Court in *Conrail* agreed that the evidence showed a past practice by which the employer had on several occasions unilaterally modified the medical standards for different types of physical examinations. That evidence, according to the Court, was sufficient to establish the employer's asserted implied provision in the contract. "Conrail's interpretation of the range of its discretion as extending to drug testing is supported by the general breadth of its freedom of action in the past, and by its practice of including drug testing within routine medical examinations in some circumstances." Id. at 317.

Unlike *Conrail*, there is no assertion here by Spirit of an implied contract provision permitting it unilaterally to change the work assignment of employees. Spirit has not presented any evidence of a past practice of unilaterally changing the work assignment of employees. Flatly, this case bears no resemblance to *Conrail*.

Given the clear divergence in the facts, Spirit instead attempts to make *Conrail* say something that it does not. Spirit misrepresents the holding in *Conrail* by maintaining, "...in light of the unique nature of CBAs as contrasted to other types of contracts, the employer could arguably have the right to act even in the absence of any provision permitting (or prohibiting) it." See Brief, at 16. That conclusion is simply wrong. Nothing in *Conrail* suggests that an employer can satisfy the arguably justifiable standard in the absence of any contract provision. *Conrail* requires, rather, that in the absence of an express provision, the employer prove an

arguably justifying implied provision on the basis of past practice–that which Spirit has failed to do here.

PAFCA in its opening brief stated justly that in order to show that a dispute is minor, the employer must show that there is a particular contract provision that arguably justifies the employer's actions. See Appellant's Brief at 8. Spirit, in a misguiding fashion, states that PAFCA mischaracterized *Conrail*, and seizing upon the word "particular," Spirit suggests that the Court in *Conrail* found the dispute to be minor even though there was no "particular" provision in the Agreement arguably justifying the employer's actions. Brief, at 16. It is clearly Spirit that mischaracterizes *Conrail*.

The basis of the Court's decision in that case was the existence of a "particular," implied provision in the contract permitting the employer to take unilateral action. Since Spirit has not offered any evidence of such an implied provision here, it sought rather to suggest that *Conrail* does not require the existence of a contract provision at all, whether implied or express. Spirit's suggestion is wrong. Unlike Spirit's statements, PAFCA's assertion in its opening brief is clearly consistent with *Conrail*'s holding.

An employer may not satisfy the *Conrail* standard in the absence of an express or implied provision in the contract for the same reason that retained rights cannot logically exist under the RLA. Recognizing contractual silence as arguable

justification for a change in work conditions would undermine *Conrail* by confining major disputes to those in which the contract expressly prohibits the employer from taking the disputed action.  To recognize retained rights under the RLA would similarly nullify *Conrail*, by permitting employers to argue that all employment actions are reserved to the employer (and thus all disputes minor) unless expressly prohibited by the bargaining agreement.

Perhaps the most significant distinguishing element between the NLRA and the RLA is the absence in the former of the major/minor dispute framework which lies at the core of the latter.  While that distinction proved immaterial to the recognition under the RLA of the concept of managerial prerogative derived in the NLRA[4], it is prohibitive, for the reasons just stated, of the attempt by the district court and by Spirit, to carry-over from the NLRA, the concept of retained rights–a concept that would essentially render *Conrail* a nullity.  According to the Supreme Court's reminder in footnote 15 of *PL&E*, the incompatibility was already recognized by the Court in *Shore Line*.[5]

The district court erred in failing to address the *PL&E* clarification of *Shore Line*, and this case should therefore be remanded.

---

[4] See *PL&E*, 491 U.S. 490

[5] The recognition of retained rights in the context of the RLA would almost certainly lead to the sort of unnecessary disputes that the Act seeks to avoid, as unions would likely attempt to place prohibitive language throughout the contract in order to retain Section 6 rights.

Little need be said of Spirit's argument that management rights clauses can serve as a basis for finding a dispute minor. <u>See</u> Brief, at 18. The management rights clause in this case is distinguishable from those in the cases that Spirit cites, in that the court in this case found that the management rights clause here at issue effectuates a retention of rights, not a conferral of rights (See Section 1 hereof). Even though an employer may bargain for a management rights clause that confers certain rights upon the employer and can serve thus as the basis for a finding that a dispute is minor, that is not what Spirit did here. The point, therefore, is entirely insignificant.

## III.   THIS CASE IS INDISTINGUISABLE FROM SHORELINE

*Shore Line* and this case are indistinguishable in all material respects. As the railroad did in *Shore Line*, Spirit has sought to modify unilaterally, employees' work location. To justify such action, Spirit cites to the absence of a provision in the Agreement prohibiting it from doing so, as the railroad did in *Shore Line*.

The Supreme Court made clear in *Shore Line* that the absence of a provision in the bargaining agreement prohibiting an employer to change employees' work location does not entitle an employer to do so without exhausting the procedures set forth in Section 6. The Court's decision in PL&E, 490 U.S. 491, confirmed that the bargaining requirement exists, regardless of whether the union has issued a Section 6 notice.

Since the district court distinguished this case from Shore Line on the sole ground that no Section 6 notice has been issued in this case, the district court's order conflicts with the PL&E. For that reason, this case should be remanded.

## IV.    REQUEST FOR ORAL ARGUMENT

PAFCA requests that this matter be set for oral argument as this case presents an important question of first impression in this Circuit, to wit, the existence of retained rights, as defined by the district court, under the RLA,   In addition, PAFCA believes that oral argument would be useful to elucidate other key issues in this litigation, including the conflict between the Court's ruling in *PL&E*, 490 U.S. 491, and the basis upon which the district court attempted to distinguish this case from *Shore Line,* 396 U.S. 142.

## <u>CONCLUSION</u>

The district court erred when it looked to the National Labor Relations Act to hold, contrary to applicable United States Supreme Court precedent, that employers under the RLA have a legally retained right to change employees' working conditions without complying with the procedures of Section 6 of the RLA, 45 U.S.C. §156, if the collective bargaining agreement does not expressly prohibit the employer from doing so. It also erred when it made conflicting findings relating to the parties' collective bargaining agreement, and disregarded the plain language thereof in determining that the present dispute is not a "major" dispute under the

RLA.

For the foregoing reasons Plaintiff-Appellant PAFCA requests that this Court reverse the Order of March 25, 2022, and direct the entry of Order enjoining Defendant-Appellee Spirit from implementing changes to employees' designated site of work prior to exhausting the procedures set forth in Section 6 of the Act. In the alternative, PAFCA requests that this case be remanded to the district court for further proceedings consistent with the Supreme Court's rulings in *Shore Line and PL&E.*

### Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6016 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Office 16 in Times New Roman 14 Point.

**Date:** September 27, 2022          Respectfully submitted,

  /s/ D. Marcus Braswell, Jr.____
**D. Marcus Braswell, Jr. (146160)**
**mbraswell@sugarmansusskind.com**
**SUGARMAN, SUSSKIND, BRASWELL &**
**HERRERA, P.A.**
150 Alhambra Cir., Suite 725
Coral Gables, FL  33134
Tel.:  (305) 529-2801
Fax:   (305) 447-8115

**Attorneys for Plaintiff-Appellant PAFCA**